NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2055-10T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KASHIF K. PATTERSON,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

May 9, 2014

APPELLATE DIVISION

Submitted December 16, 2013 — Decided May 9, 2014

Before Judges Yannotti, Ashrafi and Leone.

On appeal from the Superior Court of New Jersey, Law Division, Salem County, Indictment No. 09-12-00629.

Joseph E. Krakora, Public Defender, attorney for appellant (John Douard, Assistant Deputy Public Defender, of counsel and on the brief).

John T. Lenahan, Salem County Prosecutor, attorney for respondent (Gregory G. Waterston, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

LEONE, J.S.C. (temporarily assigned).

Defendant Kashif K. Patterson appeals from his judgment of conviction for drug offenses.  We affirm his convictions despite claims of prosecutorial misconduct.  However, we hold that

N.J.S.A. 2C:43-6(f) cannot be used to impose an extended term for the offense of drug trafficking within 500 feet of a public housing facility under N.J.S.A. 2C:35-7.1.  Thus, we remand for the vacating of defendant's sentences and resentencing.

I.

On September 3, 2009, law enforcement officers executed a search warrant at a residence.  They surprised defendant and co-defendants George E. Roane, III and Amir R. Cooke.[1]  The three defendants were around a table in the living room.  On the table there was a cellophane bag containing ninety-two baggies filled with crack cocaine.  On the floor next to the table, in plain sight of defendants, there was a cellophane bag containing eighty baggies filled with crack, and a clear bag containing crushed oxycodone pills.  In the bedroom and kitchen, the police found eight glass vials containing marijuana, hundreds of empty vials, six oxycodone pills, and a digital scale.

Detective Patrick Vengenock found in defendant's pocket $1,175 in cash, including thirty-seven $20 bills and thirteen $10 bills.  Roane had $192 in his pockets.  In Cooke's pockets, police found one vial of marijuana and one $10 baggie of crack.

---

[1] The indictment names Cooke as "Cook".

Defendant told Vengenock that the cocaine was not his. Roane said he had just arrived. Cooke claimed all 172 baggies were his and for his personal consumption.

The indictment charged all three defendants with six counts. Count one charged third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1); count two charged third-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3); count three charged second-degree possession of cocaine with intent to distribute within 500 feet of a public housing facility, N.J.S.A. 2C:35-5(a)(1) and -7.1; count four charged third-degree possession of oxycodone, N.J.S.A. 2C:35-10(a)(1); count five charged fourth-degree possession of less than an ounce of marijuana with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(12); and count six charged third-degree possession of marijuana with intent to distribute within 500 feet of a public housing facility, N.J.S.A. 2C:35-5(a) and -7.1.

Cooke pled guilty to count two, and defendant and Roane went to trial together. The State called Detective Vengenock, a searching officer, and a police drug expert. The expert testified that the 172 baggies of crack were packaged and intended for distribution at $10 per baggie. The expert also

testified that narcotics distributors frequently have large sums of cash on their person, predominantly in $10 and $20 bills.

Roane and his mother testified to support his claims that he had just arrived. Defendant presented no evidence.

The jury convicted defendant of counts one, two, three, and four, and acquitted him of counts five and six. The jury convicted Roane of counts one and four, and acquitted him of the remaining counts.

At defendant's October 8, 2010 sentencing, the court merged count one into counts two and three. On count three, charging possession of cocaine with intent to distribute within 500 feet of a public housing facility, the court sentenced defendant to twelve years in prison, with five years of parole ineligibility. On counts two and four, the court sentenced him to prison terms of four years, to run concurrent to count two and each other.

Defendant appeals, raising the following arguments:

> POINT 1
>
> THE PROSECUTOR COMMITTED MULTIPLE AND INTER-RELATED ACTS OF MISCONDUCT THAT DENIED MR. PATTERSON A FAIR TRIAL AND DUE PROCESS OF LAW.
>
>> A. THE INTRODUCTION OF EVIDENCE THAT MR. PATTERSON WAS UNEMPLOYED AND CARRIED $1,175 CREATED THE IMPERMISSIBLE INFERENCE THAT HE DEALT DRUGS FOR PROFIT.

B.   PROSECUTORIAL   MISCONDUCT   DURING
SUMMATION   UNCONSTITUTIONALLY   SHIFTED
THE   BURDEN   OF   PROOF,   AND   IMPLICITLY
COMMENTED   ON   MR.   PATTERSON'S   ELECTION
NOT TO TESTIFY.

C.   THE   PROSECUTOR   INDUCED   VENGENOCK
TO EXPRESS AN OPINION IMPUGNING COOKE'S
HONESTY WHEN HE ADMITTED THE DRUGS WERE
HIS,   THEREBY   IMPROPERLY   ATTACKING   MR.
PATTERSON'S DEFENSE.

D.   BECAUSE   OF   THE   MULTIPLE   AND
INTERRELATED INSTANCES OF PROSECUTORIAL
MISCONDUCT,   MR.   PATTERSON   WAS   DENIED
HIS   CONSTITUTIONAL   RIGHTS   TO   DUE
PROCESS AND A FAIR TRIAL.

POINT II

THE   COURT   ERRED   IN   IMPOSING   AN   AGGREGATE
SENTENCE   OF   TWELVE   YEARS   AS   IT   WAS   ILLEGAL
AND MANIFESTLY EXCESSIVE.

II.

In defendant's first Point, his first two arguments are based on the following facts. Detective Vengenock testified without objection that when he seized the $1,175 from defendant, he asked defendant "if he was currently employed [and] where the money came from. He indicated he was unemployed and that he won the money in Atlantic City gambling."

Cross-examining the police drug expert, defendant's counsel elicited that "[i]f a man owned a deli or some kind of family business and he had with him $1,200, you wouldn't consider that to be someone that was involved in drugs." In his closing,

defendant's counsel referenced that testimony, and defendant's statement that "the money I have on me is from gambling in Atlantic City." Defendant's counsel elaborated: "he goes to Atlantic City and he gambles. Now, that particular time he made money. And he told that to them, it's from the money I made at the casino."

In his closing, the prosecutor noted that defendant had in his pocket $1,175, overwhelmingly in $10 and $20 bills. The prosecutor highlighted the drug expert's testimony that possessing such cash was consistent with drug trafficking. He then argued:

> Mr. Patterson had $1,175, it's a lot of money. He apparently doesn't have a job, which he admitted to the officers and apparently he went gambling. But we've never heard anything about where he went gambling from, no receipts, no card, no nothing and they could have produced some testimony about that but we don't have any. So we have to take the version that that's where all the money came from gambling. There's been zero corroboration of same. It's a lot of money for somebody that doesn't have a job who['s] found in the presence of 172 baggies of cocaine . . . .

After the closing, defendant objected to the prosecutor's "no corroboration" argument and demanded a mistrial. The trial court found that the prosecutor "was not arguing that Mr. Patterson was required to testify or that he had any burden to

produce corroborating evidence." However, to prevent any misunderstanding, the court instructed the jury:

> As you know, the State alleges that Mr. Patterson made a statement on the day he was arrested relating to the source of the money that he had, supposedly had in his pocket.
>
> The Prosecutor commented on Mr. Patterson's alleged statement in his closing and he pointed out that it was not corroborated. You may consider all of the proofs, or the lack of proofs relating to the alleged statement in assessing whether it was made, and if made whether it was credible. I remind you, however, that Mr. Patterson has the absolute right to remain silent and he had no burden to produce any proofs at trial.
>
> In addition, in his purported statement Mr. Patterson allegedly indicated that he was unemployed and that he had won the money in Atlantic City. I instruct you that you are not to consider his employment status for any purpose during your deliberations as it is not relevant to your deliberations as to whether the State has proven him guilty of the charges beyond a reasonable doubt.

The court then commenced its final charge, in which it repeated this curative instruction. The court also warned that defendant's alleged oral statement must be considered with caution and only as the court had instructed, and reiterated the court's opening instruction that any stricken testimony "is not evidence" and "must be disregarded." The court also reiterated its preliminary and opening instructions that the State had the

burden of proof, that the burden never shifts to defendant, and that defendant had no obligation to testify or offer any proof.

After the verdict, defendant made a motion for a new trial. The trial court found that the introduction of defendant's statement explaining the money was from gambling gave the State a right to challenge its credibility, and that the curative instructions were sufficient both to prevent any inference that defendant was required to produce corroborating evidence, and to prevent consideration of his employment status.

## A.

Defendant first challenges the prosecutor's introduction of evidence regarding defendant's possession of $1,175. This is more properly viewed as a challenge to the trial court's admission of evidence. "Considerable latitude is afforded a trial court in determining whether to admit evidence, and that determination will be reversed only if it constitutes an abuse of discretion." State v. Feaster, 156 N.J. 1, 82 (1998). "However, if the party appealing did not make its objection to admission known to the trial court, the reviewing court will review for plain error, only reversing if the error is 'clearly capable of producing an unjust result.'" State v. Rose, 206 N.J. 141, 157 (2011) (quoting R. 2:10-2).

Here, defendant did not object to either the admission of the $1,175 found in his pocket, or the expert testimony that possession of that amount of cash in such denominations was indicative of drug dealing. Nor can he show plain error. Defendant now relies on State v. Terrell, 359 N.J. Super. 241 (App. Div.), certif. denied, 177 N.J. 577 (2003), but that case did "not hold that evidence of the money found on defendant's person should have been kept from the jury." Id. at 248. Moreover, "[a]dmission of expert testimony on drug possession and distribution techniques is permissible when reasonably required to assist jurors in understanding subjects that are beyond the ken of an average layperson." State v. Nesbitt, 185 N.J. 504, 507 (2006); see State v. Sowell, 213 N.J. 89, 100 (2013) (noting "we do not expect ordinary jurors to understand the difference between drugs possessed for distribution as opposed to personal use").

Defendant also did not object to the admission of his statement to Detective Vengenock.[2] To the contrary, as

---

[2] After fifteen other questions Roane's defense counsel stated that the prosecutor "got into employment status which I don't believe is permissible." When the trial court responded, "You didn't raise it, you waived it," Roane's counsel replied: "No, I don't think you understand. My reason for bringing it up, is I don't want [it] to happen when it comes to my [client]." The court then instructed the prosecutor to approach the bench first if he intended "to ask about Mr. Roane's employment status." It
(continued)

defendant's counsel later admitted, he was using defendant's statement as a basis for his defense. Specifically, counsel's closing argument relied on that statement to show that defendant got the $1,175 from gambling in Atlantic City rather than by selling the drugs to Cooke or others. "[T]rial errors that were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal." State v. A.R., 213 N.J. 542, 561 (2013) (quotation marks omitted).

B.

Defendant's remaining arguments in his first Point claim prosecutorial misconduct in summation. We must hew to our standard of review. "Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." State v. R.B., 183 N.J. 308, 332 (2005). "It is not improper for the prosecution to suggest that the defense's presentation was imbalanced and incomplete." State v. Timmendequas, 161 N.J. 515, 593 (1999), cert. denied, 534 U.S. 858, 122 S. Ct. 136, 151 L. Ed. 2d 89 (2001). "'[T]o justify reversal, the prosecutor's

_____

(continued)
is apparent that Roane's counsel was speaking, but the transcriber mistakenly inserted the name of defendant's counsel. In any event, this was not a "contemporaneous objection." See State v. Ingram, 196 N.J. 23, 42 (2008).

10

conduct must have been "clearly and unmistakably improper,"'"
and "'so egregious as to deprive defendant of a fair trial.'"
State v. Wakefield, 190 N.J. 397, 437-38 (2007), cert. denied,
552 U.S. 1146, 128 S. Ct. 1074, 169 L. Ed. 2d 817 (2008).  We
must consider "'whether defense counsel made a timely and proper
objection, whether the remark was withdrawn promptly, and
whether the court ordered the remarks stricken from the record
and instructed the jury to disregard them.'"  Id. at 438.

After the prosecutor's summation, defendant's counsel
objected to the prosecutor's "no corroboration" argument, but
not to the references to defendant's statement that he was
unemployed and obtained the $1,175 by gambling.[3]  Both defense
counsel confirmed that there had been no objection to the
statement's admission.  "[D]efendant's failure to object to this
[evidence of unemployment] or the prosecutor's summation on this
issue indicates that he did not, in the context of the proofs,
deem them prejudicial or improper."  State v. Farr, 183 N.J.
Super. 463, 469 (App. Div. 1982); see Ingram, supra, 196 N.J. at
42; Timmendequas, supra, 161 N.J. at 576.

---

[3]  Roane's defense counsel mentioned that the prosecutor
referenced defendant's statement that he was unemployed.  The
trial court responded, "You can't make objections on behalf of
another [lawyer's] client.  He's not your client."  Again,
though Roane's counsel was speaking, the transcriber mistakenly
switched the names of the attorneys for defendant and Roane.

The next day, defendant's counsel "after further consideration" asked the court to give a curative instruction about defendant's unemployment, and confirmed that the trial court's proposed instruction was acceptable. "[T]hus, defendant can prevail on [this claim] only by demonstrating 'plain error.'" State v. Angoy, 329 N.J. Super. 79, 89 (App. Div.), certif. denied, 165 N.J. 138 (2000).

"Defendant's belated effort to raise that issue on motion for a new trial does not entitle him to avoid the plain error standard of review." State v. Noble, 398 N.J. Super. 574, 595 n.4 (App. Div.), certif. denied, 195 N.J. 522 (2008). Moreover, "[w]hether testimony or a comment by counsel is prejudicial and whether a prejudicial remark can be neutralized through a curative instruction or undermines the fairness of a trial are matters 'peculiarly within the competence of the trial judge.'" State v. Yough, 208 N.J. 385, 397 (2011). Accordingly, "'[a]n appellate court will not disturb a trial court's ruling on a motion for a mistrial, absent an abuse of discretion that results in a manifest injustice.'" State v. Jackson, 211 N.J. 394, 407 (2012).

Defendant has failed to make such a showing, let alone show plain error. As the trial court recognized, the New Jersey courts have long held that it is "improper and injurious" for a

12    A-2055-10T1

prosecutor to introduce evidence for the sole purpose of arguing "that defendant had no apparent means of income and hence was likely to commit a crime for dollar gain." State v. Mathis, 47 N.J. 455 (1966).

However, New Jersey courts have also recognized that, when a defendant argues that he lacked the intent to commit a crime because he has income, a prosecutor's introduction of evidence as to the defendant's "employment status and financial obligations and his comments during summation with respect thereto [are] not improper." Farr, supra, 183 N.J. Super. at 469. In Farr, we held the prosecution could comment upon the defendant's unemployment because he testified, "'Why in God's earth would I rob a store? I had two hundred dollars in my pocket.'" Ibid. In State v. Downey, 237 N.J. Super. 4, 16 (App. Div. 1989), certif. denied, 121 N.J. 627 (1990), we held that the State could introduce evidence of the defendant's financial situation to rebut her suggestion that she "would not have murdered her husband for financial gain because she had already anticipated a substantial recovery on her civil lawsuit." See also State v. Conyers, 58 N.J. 123, 135 (1971) (distinguishing Mathis where "defendant himself injected" a topic into the case).

Here, defendant proffered to authorities that he was unemployed but had won the $1,175 gambling in Atlantic City. Defendant's counsel then used that statement in his closing argument as a key defense and as rebuttal to the drug trafficking expert's testimony. Defendant could not expect his statement to be immune from prosecutorial comment in closing. "A prosecutor is permitted to respond to an argument raised by the defense so long as it does not constitute a foray beyond the evidence adduced at trial." State v. Munoz, 340 N.J. Super. 204, 216 (App. Div.), certif. denied, 169 N.J. 610 (2001); see State v. McGuire, 419 N.J. Super. 88, 145 (App. Div.) ("A prosecutor's otherwise prejudicial comments may be deemed harmless if made in response to defense arguments."), certif. denied, 208 N.J. 335 (2011). Under Farr and Downey, the prosecutor could challenge the credibility of defendant's position that he had a source of income other than drug dealing. Therefore, "the prosecutor's references to defendant's lack of employment at the time of the offense" were not improper because they "were not intended to be impermissibly suggestive of indigency as a motive for crime." See State v. Zola, 112 N.J. 384, 427 (1988), cert. denied, 489 U.S. 1022, 109 S. Ct. 1146, 103 L. Ed. 2d 205 (1989).[4]

---

[4] Other than the factual rendition by Detective Vengecock of the

(continued)

In any event, the trial court's careful curative instruction removed any possibility of prejudice from the mention of defendant's unemployment. The court instructed the jurors that they were "not to consider his employment status for any purpose during [their] deliberations." "We presume the jury followed the court's instructions." State v. Smith, 212 N.J. 365, 409 (2012), cert. denied, ___ U.S. ___, 133 S. Ct. 1504, 185 L. Ed. 2d 558 (2013). The absence of prejudice is evidenced by the jury's verdicts, which acquitted defendant of two charges of possession with intent to distribute. See State v. Krivacska, 341 N.J. Super. 1, 43 (App. Div.), certif. denied, 170 N.J. 206 (2001), cert. denied, 535 U.S. 1012, 122 S. Ct. 1594, 152 L. Ed. 2d 510 (2002). Because "the trial court promptly and effectively dealt with those comments via a curative instruction," Wakefield, supra, 190 N.J. at 440, "the references to defendant's impecuniosity played no part in the jury's determination of defendant's guilt." State v. Robinson, 139 N.J. Super. 58, 63 (App. Div. 1976), certif. denied, 75 N.J. 534 (1977).

---

(continued)
events of the search, the prosecution made no reference to defendant's unemployment until after defendant made his statement a centerpiece of his defense.

Defendant's reliance on <u>Terrell</u> is misplaced. There, a prosecutor stated as the "first and primary foremost" reason why the jury should find that Terrell was dealing drugs was that he was unemployed yet had $965 in his pockets. <u>Terrell</u>, <u>supra</u>, 359 <u>N.J. Super.</u> at 245. However, Terrell did not allege as a defense that he had other sources of income, which permits prosecutorial response under <u>Downey</u> and <u>Farr</u>.[5] Further, Terrell objected to the prosecutor's question eliciting the evidence of his unemployment, and was not required to show plain error. <u>Id.</u> at 244, 247-48. Finally, the trial court denied Terrell's objection, and gave no curative or limiting instruction. We expressly reversed "[b]ecause of unremediated prejudice." <u>Id.</u> at 243. Therefore, we find <u>Terrell</u> is distinguishable.

C.

Defendant next challenges the prosecutor's "no-corroboration" argument, arguing that it violated his right to remain silent and shifted the burden of proof. Generally, "a defendant has no obligation to establish his innocence," either by "assuming the stand to testify" or by "proffering affirmative evidence on his own behalf." <u>State v. Jones</u>, 364 <u>N.J. Super.</u>

---

[5] <u>Terrell</u> gave no indication that it sought to contravene <u>Downey</u> or <u>Farr</u> by its statement that "[t]he introduction of evidence regarding whether or not a defendant has a regular source of income is, when a collateral issue, prohibited in any form." <u>Terrell</u>, <u>supra</u>, 359 <u>N.J. Super.</u> at 247.

376, 382 (App. Div. 2003). "A defendant need not call any witnesses, choosing instead to rely on the presumption of innocence." State v. Hill, 199 N.J. 545, 559 (2009). However, "not all summation comment on a defendant's failure to produce a witness would produce the impermissible effect of lessening the State's burden of proof," id. at 569 n.9, and "[e]ven a direct comment on a defendant's failure to testify may be cured by a judge's timely and effective action," State v. Scherzer, 301 N.J. Super. 363, 441 (App. Div.), certif. denied, 151 N.J. 466 (1997).

The prosecutor here should not have argued that the defense "could have produced some testimony about" where defendant got the $1,175. Nonetheless, the trial court wisely obviated any prejudice from that comment and the remaining remarks regarding the absence of corroborative evidence. The court sustained defendant's objection and twice instructed the jury that defendant "has the absolute right to remain silent and he had no burden to produce any proofs at trial."

Therefore, "we are satisfied that any possible infringement on defendants' right to silence did not rise to the level of reversible error because of the effective action of the trial judge in re-establishing in the minds of the jurors the importance of that right." Id. at 442. The curative

instruction was also sufficient to remove any implication "that the defense had some burden of proof." State v. Jenkins, 349 N.J. Super. 464, 479 (App. Div.), certif. denied, 174 N.J. 43 (2002). Considering that defendant was found with 92 baggies of crack on the table in front of him and 80 more crack baggies and crushed oxycodone pills at his feet, the evidence of his possession of the drugs with intent to distribute was very strong. The prosecutor's improper comments were harmless error, and the trial court quickly corrected the error.

### III.

When Detective Vengenock testified that Cooke claimed "the drugs in the living room were his and [were] for [his] personal use," the prosecutor improperly asked Vengenock if he believed Cooke. Vengenock replied, "No, I didn't," but the answer was not heard by the court or counsel, and may not have been heard by the jury.

In any event, the trial court sustained Roane's objection, and told the prosecutor that it was improper to ask a police officer his assessment of another witness's credibility, citing State v. Frisby, 174 N.J. 583 (2002). The court denied Roane's mistrial request, instead instructing the jury that:

> I'm striking the last question to [Detective] Vengenock. No witness can testify as to the believability or the credibility of another person. That's your

> job. You're here to, — as I told you in your opening instructions [—] assess the credibility of witnesses, assess the credibility of evidence and weigh it. So I would ask you to disregard the question. Whatever a witness'[s] opinion is, with regard to those issues is irrelevant and should never be considered by you.

Defendant ignores this curative instruction, as well as the court's final instruction that the jurors "alone are the sole and exclusive judges of the evidence [and] of the credibility of the witnesses." The court's instructions were sufficient to remove any prejudice from the single question and the brief, possibly unheard answer. See Smith, supra, 212 N.J. at 409.

By contrast, there was no curative instruction in Frisby. In Frisby, the testimony of two separate police officers that another witness's version of the events was "more credible" than the defendant's version, in a trial that was a "pitched credibility battle" between that witness and defendant. Frisby, supra, 174 N.J. at 591-92, 596. Here, the detective's comment was "considerably more limited in scope," State v. R.B., 183 N.J. 308, 333 n.5 (2005), "did not express an opinion as to defendant's guilt," State v. Kemp, 195 N.J. 136, 157 (2008), and was not "'so egregious that it deprived defendant of a fair trial,'" State v. Bunch, 180 N.J. 534, 549 (2004). Considering "the substantial evidence of [the] defendant's guilt" and "the trial court's instruction to the jury that it must determine the

witnesses' credibility," we find no reversible error in the trial. _Ibid._

### IV.

At sentencing, the prosecutor supplied a certified judgment of conviction showing that defendant had been previously convicted of distributing a controlled dangerous substance in 2006. The prosecutor applied under _N.J.S.A._ 2C:43-6(f) for a mandatory extended term on count three, defendant's conviction for second-degree possession of cocaine with intent to distribute "within 500 feet of the real property comprising a public housing facility, a public park, or a public building." _N.J.S.A._ 2C:35-7.1. Defendant now challenges the imposition of a mandatory extended term on that count, arguing that this public facility offense is not eligible for a mandatory extended term under _N.J.S.A._ 2C:43-6(f).

Although defendant agreed it was appropriate to grant the prosecutor's motion at sentencing, "'[t]he parties cannot negotiate an illegal sentence,' and a defendant may not acquiesce in the imposition of an illegal sentence." _State v. Crawford_, 379 _N.J. Super._ 250, 258 (App. Div. 2005) (citation omitted). Because this is an illegal sentence, we consider the issue in the interests of justice. _R._ 2:10-2; see _R._ 3:21-10(b)(5).

To resolve this issue, we must interpret N.J.S.A. 2C:43-6(f) (Subsection 6(f)). "Because statutory interpretation involves the examination of legal issues," we apply "a de novo standard of review." State ex rel. K.O., 217 N.J. 83, 91 (2014) (citation omitted). "In statutory interpretation, a court's role 'is to determine and effectuate the Legislature's intent.'" Ibid. "The first step toward that end is to consider the plain language of the statute." Ibid.

Subsection 6(f) enhances the penalty for specified subsequent crimes by a person "who has been previously convicted of manufacturing, distributing, dispensing or possessing with intent to distribute a controlled dangerous substance." N.J.S.A. 2C:43-6(f). Such a person "shall upon application of the prosecuting attorney be sentenced by the court to an extended term" when that person is convicted

> of manufacturing, distributing, dispensing or possessing with intent to distribute any dangerous substance or controlled substance analog under N.J.S. 2C:35-5, of maintaining or operating a controlled dangerous substance production facility under N.J.S. 2C:35-4, of employing a juvenile in a drug distribution scheme under N.J.S. 2C:35-6, leader of a narcotics trafficking network under N.J.S. 2C:35-3, or of distributing, dispensing or possessing with intent to distribute on or near school property or buses under section 1 of P.L.1987, c.101 ([N.J.S.A.] 2C:35-7)[.]
>
> [N.J.S.A. 2C:43-6(f).]

In this list of offenses eligible for a mandatory extended term, Subsection 6(f) does not list the public facility offense, N.J.S.A. 2C:35-7.1. Instead, Subsection 6(f) clearly and unambiguously lists only N.J.S.A. 2C:35-3, -4, -5, -6, and -7. "[W]hen a statute's language is clear and unambiguous, we need delve no deeper than the act's literal terms to divine the Legislature's intent." State v. Smith, 197 N.J. 325, 333 (2009) (quotation marks omitted). "If the language is 'clear on its face,' courts should 'enforce [the statute] according to its terms.'" Perrelli v. Pastorelle, 206 N.J. 193, 200 (2011).

We note that Subsection 6(f)'s non-inclusion of N.J.S.A. 2C:35-7.1 may simply be a matter of timing. Subsection 6(f) was enacted as part of the Comprehensive Drug Reform Act of 1987 (the Act), L. 1987, c. 106, § 12. The public facility offense in N.J.S.A. 2C:35-7.1 was enacted in 1997. L. 1997, c. 327, § 1. The Legislature has never amended Subsection 6(f) to add the public facility offense to the list of offenses eligible for a mandatory extended term, even though the Legislature has twice amended N.J.S.A. 2C:43-6 since 1997. See State v. P.L., 369 N.J. Super. 291, 294 (App. Div. 2004). In the absence of legislative action, "[w]e cannot rewrite a criminal statute to increase sentencing penalties that do not appear clearly on the face of that statute." State v. Gelman, 195 N.J. 475, 487

22

(2008). Thus, we hold that the public facility offense cannot be subject to a mandatory extended term under Subsection 6(f) as currently written.

We have considered that Subsection 6(f) applies to recidivist drug traffickers who violate N.J.S.A. 2C:35-5, and that the public facility statute requires that a defendant must violate N.J.S.A. 2C:35-5.[6] However, Subsection 6(f) specifically lists N.J.S.A. 2C:35-7, even though that offense similarly requires that a defendant must violate N.J.S.A. 2C:35-5.[7] If

---

[6] N.J.S.A. 2C:35-7.1(a) states:

> Any person who violates subsection a. of N.J.S. 2C:35-5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while in, on or within 500 feet of the real property comprising a public housing facility, a public park, or a public building is guilty of a crime of the second degree . . . .

[7] N.J.S.A. 2C:35-7(a) states:

> Any person who violates subsection a. of N.J.S. 2C:35-5 by distributing, dispensing or possessing with intent to distribute a controlled dangerous substance or controlled substance analog while on any school property used for school purposes which is owned by or leased to any elementary or secondary school or school board, or within 1,000 feet of such school property or a school bus, or while on any school bus, is guilty of a crime of the third degree . . . .

A-2055-10T1

that was sufficient to make N.J.S.A. 2C:35-7 subject to Subsection 6(f), it would render superfluous the Legislature's listing of N.J.S.A. 2C:35-7 in Subsection 6(f).[8]  We decline to interpret Subsection 6(f) in a manner that would render "words in [the] statute surplusage."  Shelton v. Restaurant.com, Inc., 214 N.J. 419, 440 (2013).

Instead, we read the listing of N.J.S.A. 2C:35-7 in Subsection 6(f) as proof that the Legislature intended to specify those offenses subject to the mandatory extended term, rather than leaving to the courts to draw such inferences.

The legislative history of these enactments is consistent with this interpretation.  The Assembly Judiciary Committee provided the Official Commentary to the Comprehensive Drug Reform Act of 1986 (Laws 1987, Chapter 106), reprinted in 9 Crim. Just. Q. 149 (Fall 1987) ("Official Commentary").  The Official Commentary highlighted that the Act provided for "mandatory extended terms and periods of parole ineligibility for certain repeat drug distributors."  Id. at 150 (emphasis added).  The Official Commentary's discussion of N.J.S.A. 2C:43-6 states that "this section is designed to incapacitate drug

---

[8] Subsection 6(f) similarly lists N.J.S.A. 2C:35-6, even though it requires a defendant to employ a juvenile to violate "N.J.S. 2C:35-4 or subsection a. of N.J.S. 2C:35-5," both of which are listed in Subsection 6(f).

distributors who are repeat offenders" and who are convicted of N.J.S.A. 2C:35-3, -4, -5, -6, and -7. Id. at 169. In the legislative history of N.J.S.A. 2C:35-7.1, there is no reference to Subsection 6(f).

Even "if there were ambiguity in the statutory provisions that we have analyzed, we would be guided by the doctrine of lenity because we are construing a criminal statute." State v. Rangel, 213 N.J. 500, 515 (2013). "That doctrine 'holds that when interpreting a criminal statute, ambiguities that cannot be resolved by either the statute's text or extrinsic aids must be resolved in favor of the defendant.'" Ibid. Thus, even if Subsection 6(f)'s text was ambiguous, the rule of lenity would require us to interpret Subsection 6(f) as inapplicable to the public facility offense, given the absence of any contrary legislative history. See State v. Regis, 208 N.J. 439, 451-52 (2011) ("[T]he rule of lenity derives from the principle that '[n]o one shall be punished for a crime unless both that crime and its punishment are [not] clearly set forth in positive law.'").

Accordingly, we remand to the trial court with instructions to vacate defendant's sentences and resentence without imposing a mandatory extended term under N.J.S.A. 2C:43-6(f) on his conviction under N.J.S.A. 2C:35-7.1.

We note that Subsection 6(f) does apply to defendant's conviction under N.J.S.A. 2C:35-5, and so the prosecution may make a motion under Subsection 6(f) for an extended term regarding count two in accordance with Subsection 6(f)'s terms.

We also note that we have held that a "third-degree Section 5 conviction merges into the Section 7.1 conviction, and that defendant must be sentenced as a second-degree offender consistent with the Section 7.1 conviction." State v. Gregory, 336 N.J. Super. 601, 608 (App. Div. 2001); see State v. Dillihay, 127 N.J. 42, 49-56 (1992) (requiring merger of convictions under N.J.S.A. 2C:35-5 and N.J.S.A. 2C:35-7); State v. Gonzalez, 123 N.J. 462, 464 (1991) (same). Therefore, count two must be merged with count three. If a minimum term of parole ineligibility is imposed on count two under Subsection 6(f), that term survives the merger with count three. See Dillihay, supra, 127 N.J. at 45, 52-56; State v. Parker, 335 N.J. Super. 415, 426 (App. Div. 2000).

Convictions affirmed; remanded for resentencing.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION