**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4795-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ABDUL S. AZIZ,

     Defendant-Appellant.

_____

> Submitted November 10, 2020 – Decided November 24, 2020
>
> Before Judges Yannotti, Haas, and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 11-12-1201.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Ruth E. Hunter, Designated Counsel, on the brief).
>
> Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A Union County grand jury charged defendant Abdul Aziz with first-degree murder, N.J.S.A. 2C:11-3(a)(1) and/or (2) (count one); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count two); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three).

Prior to trial, defendant filed a number of motions, including a request to suppress statements he made to the police during an interview. After the Supreme Court granted defendant's motion for leave to appeal the Law Division's February 24, 2014 decision denying defendant's suppression motion and remanded the matter to this court, we rendered a decision suppressing defendant's statement. State v. Aziz, No. A-0931-14 (App. Div. Apr. 1, 2016) (slip op. at 1, 12).

Following a multi-day trial, the jury convicted defendant of all three counts of the indictment. The judge sentenced defendant to fifty years in prison on count one, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, and five years of parole supervision upon his release. The judge sentenced defendant to concurrent seven-year terms on counts two and three, subject to forty-two

months of parole ineligibility on each count.  The judge merged count three into count one.  This appeal followed.

On appeal, defendant raises the following contentions:

POINT I

DEFENDANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED BY THE MORE THAN SIX-YEAR DELAY BETWEEN HIS ARREST AND TRIAL SUCH THAT THE INDICTMENT MUST BE DISMISSED.  (Not Raised Below).

POINT II

DEFENDANT WAS DEPRIVED OF A FAIR TRIAL BECAUSE THE TRIAL COURT FAILED TO INSTRUCT THE JURY ABOUT THE SPECIFIC PURPOSE FOR WHICH IT COULD CONSIDER DEFENDANT'S HOSTILE TEXT MESSAGES.  (Not Raised Below).

POINT III

THE PROSECUTOR'S COMMENTS DURING HER OPENING AND CLOSING DEPRIVED DEFENDANT OF A FAIR TRIAL BECAUSE SHE RELIED ON FACTS NOT IN EVIDENCE AND INFLAMED THE JURY.  U.S. Const. amend. XIV; N.J. Const. art. 1, ¶[¶]1, 10 (Not Raised Below).

POINT IV

THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS THE WARRANTLESS SEARCH OF THE GARAGE UNDER THE PLAIN VIEW EXCEPTION BECAUSE DISCOVERY OF

DEFENDANT'S CAR WAS NOT "INADVERTENT." SEE STATE V. BRUZZESE, 94 N.J. 210, 236-[]38 (1983).

POINT V

THIS COURT SHOULD REMAND FOR RESENTENCING BECAUSE THE COURT ERRED IN BASING AGGRAVATING FACTORS ON A PRIOR CRIME THAT WAS DISMISSED AND ON AN UNSUPPORTED FINDING THAT DEFENDANT LACKED REMORSE.

POINT VI

THE JUDGMENT OF CONVICTION SHOULD BE CORRECTED TO REMOVE THE FINES ON THE MERGED COUNT.

After reviewing the record in light of the contentions advanced on appeal, we affirm defendant's convictions and sentence, but remand to correct the Judgment of Conviction to remove the fines the judge imposed on count three.

I.

On July 11, 2011, Ramona Jackson was killed by a gunshot wound to the head and hand. The State's medical examiner determined that the gun was fired at close range.

At the time of her murder, Jackson was engaged to Sincere Johnson, who lived across the street from her. However, she had previously dated defendant and, when defendant moved back to the area earlier in the year, they rekindled

that dating relationship. During the investigation that followed Jackson's murder, the State was able to recover numerous text messages defendant had sent to both Jackson and Johnson expressing his anger and jealousy over the couple's ongoing relationship.

In the late afternoon of July 11, 2011, defendant and Jackson went to a boathouse in Elizabeth, where they used the paddleboats together for about thirty minutes. Surveillance footage from three nearby businesses captured a dark colored Ford Explorer, which was consistent with the car defendant owned, leaving the area, heading along a street toward a dead-end, and then disappearing down an access road at 7:04 p.m. The footage showed an individual in the front passenger seat of the car as it entered the access road. When the car was next seen about three and a half minutes later returning from the access road, the passenger was no longer in the front passenger seat.

At approximately 8:30 p.m., defendant entered the Elizabeth police station and told the officer at the front desk that there was a warrant for his arrest. After the officer ran a check of defendant's name, he told defendant there were no warrants for his arrest and defendant left the station.

A-4795-17T3

About five or ten minutes later, defendant returned to the station and again told the officer there was a warrant for his arrest. When the officer repeated there were no warrants, defendant left the station.

Jackson's body was found at 7:30 a.m. the next morning on the access road where the Ford Explorer had been seen on the security footage. The body was near a manhole cover.

After identifying defendant as a suspect, the police conducted surveillance of his apartment, but defendant never returned there. On July 15, 2011, the police obtained a search warrant for defendant's home and found an empty safe underneath defendant's bed.

The police learned that defendant rented one-half of a two-car garage at his apartment complex, which he shared with another tenant. The garage had separate entrances, but there was no barrier between the two spaces. The owner of the other space gave the police permission to enter her half of the garage and, when they did so, the officers were able to see defendant's Ford Explorer in the adjoining parking spot. The police then obtained a warrant to enter and search defendant's portion of the garage and his car. The police found a fresh scuff mark on the right passenger tire, which was consistent with the car having struck the manhole cover near Jackson's body.

A-4795-17T3

On July 16, 2011, defendant again returned to the police station and stated he believed the police were looking for him. By this time, a warrant had been issued for defendant's arrest, and the police took him into custody. Defendant was wearing a shirt that had a similar design to the shirt seen on the boathouse surveillance footage. The police also found that defendant had worked from February 2011 to May 2011 at a company located a short distance from where Jackson's body was found.

## II.

In Point I, defendant argues for the first time on appeal that the six-year gap between the date of his arrest and his conviction violated his right to a speedy trial. We disagree.

The Sixth Amendment to the United States Constitution and Article I of the New Jersey Constitution guarantee criminal defendants the right to a speedy trial. U.S. Const. amend. VI; N.J. Const. art. I, ¶¶ 1, 10. This right attaches at the time of defendant's arrest. State v. Tsetsekas, 411 N.J. Super. 1, 8 (App. Div. 2009).

In assessing a defendant's claim of a speedy trial violation, the court must balance the following factors: 1) the length of the delay; 2) the reasons for the delay; 3) whether and how defendant asserted his speedy-trial right; and 4) the

prejudice to defendant caused by the delay. Barker v. Wingo, 407 U.S. 514, 530 (1971); State v. Townsend, 186 N.J. 473, 487 (2006). These factors are assessed and balanced in light of competing interests: on one side, the "societal right to have the accused tried and punished" and on the other, a defendant's right to be prosecuted "fairly and not oppressively." State v. Dunns, 266 N.J. Super. 349, 380 (App. Div. 1993) (quoting State v. Farmer, 48 N.J. 145, 175 (1966)). We weigh the State's deliberate delay more heavily in favor of dismissal of the prosecution than delay attributable to the State's negligence or the court procedures and calendars. Barker, 407 U.S. at 531. Conversely, delay caused by a defendant's failure to invoke his right to a speedy trial, and the absence of actual prejudice and evidence of an advantage or benefit gained by the delay weigh in favor of the denial of the defendant's claim. State v. Misurella, 421 N.J. Super. 538, 545-46 (App. Div. 2011).

After applying the Barker factors, we are satisfied that defendant's right to a speedy trial was not violated. Defendant was arrested on July 16, 2011, and his trial did not begin until December 5, 2017, a gap of over six years. This factor therefore weighs in favor of defendant.

However, under the second Barker factor, the record demonstrates that most of this delay was attributable to defendant's motion practice, which

included a lengthy interlocutory appeal to this court and the Supreme Court successfully challenging the denial of his motion to suppress his statements to the police. In addition, defendant filed numerous other motions during the six-year period, including eight different motions on July 10, 2017. Once the trial court resolved these final applications, defendant's trial commenced. Defendant also changed his attorney several times, which added to the delay and allowed him to file additional pro se motions.

Significantly, defendant never raised his right to a speedy trial before the trial court and, therefore, the third Barker factor weighs heavily against him. Turning to the fourth factor, defendant has also failed to present any specific evidence that he was prejudiced by the delay.

In sum, we conclude there was no violation of defendant's right to a speedy trial. This was a complex prosecution of a first-degree murder charge. Defendant did not assert his right to a speedy trial at any time, and suffered no detectable prejudice by the admittedly uncommon delay. Under these circumstances, the delay by itself does not warrant reversal. Barker, 407 U.S. at 477.

For the first time on appeal, defendant contends the trial judge erred by failing to instruct the jury on the limited use of defendant's text messages to Jackson and Johnson in which he expressed his anger and jealousy over their relationship. Because the judge did not specifically inform the jury that it could only consider the messages as proof of defendant's motive as permitted by N.J.R.E. 404(b), defendant asserts that his convictions must be reversed. Again, we disagree.

The judge granted the State's pre-trial motion to admit the text messages. In his November 3, 2017 written decision, the judge explained that the messages were admissible under N.J.R.E. 404(b) to prove defendant's motive. Defendant does not challenge this ruling on appeal.

When the State introduced this evidence at trial, however, the judge did not give the jury a limiting instruction that it could only consider the messages as evidence of defendant's motive. The judge also did not give the jury a limiting instruction on this subject in his final charge.

However, it is well established that if a trial court admits evidence of other crimes or bad acts under N.J.R.E. 404(b), it "must provide a limiting instruction that 'inform[s] the jury of the purposes for which it may, and for which it may

10                                                                    A-4795-17T3

not, consider the evidence of [the] defendant's uncharged misconduct, both when the evidence is first presented and again as part of the final jury charge.'" State v. Garrison, 228 N.J. 182, 200 (2017) (first alteration in original) (quoting State v. Rose, 206 N.J. 141, 161 (2011)). Here, we agree that the judge's failure to provide a limiting instruction after the evidence was presented and as part of the final charge was a mistake.

However, the inquiry does not end there. We must next consider whether this mistake constitutes plain error requiring the reversal of defendant's convictions. When, as here, a defendant fails to object at trial, we review for plain error and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). The error must have been "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. McGuire, 419 N.J. Super. 88, 106-07 (App. Div. 2011) (quoting State v. Taffaro, 195 N.J. 442, 454 (2008)).

"In addition, any finding of plain error depends on an evaluation of the overall strength of the State's case." State v. Chapland, 187 N.J. 275, 289 (2006). "Convictions after a fair trial, based on strong evidence proving guilt beyond a reasonable doubt, should not be reversed because of a technical or

evidentiary error that cannot have truly prejudiced the defendant or affected the end result." State v. W.B., 205 N.J. 588, 614 (2011).

Applying these standards, we are satisfied that the judge's mistake was clearly incapable of producing an unjust result. The text messages contained foul language and showed defendant was angry that Jackson was having a relationship with another man. But, contrary to defendant's contention, the messages did not indicate defendant was predisposed to commit a crime.

Moreover, the State presented substantial, if not overwhelming, evidence that defendant killed the victim. The police obtained surveillance video of defendant and the victim at the boathouse. Defendant's car was also captured on surveillance footage entering an access road near where defendant used to work with a passenger, and leaving a few minutes later without one. Defendant's tire had a scrape consistent with having struck a manhole cover found near the victim's body. Defendant twice tried to turn himself in to the police on the night of the murder and finally did so the day after the police searched his apartment, garage, and car.

Given this strong evidence of defendant's guilt, we conclude that any error resulting from the judge's failure to give a limiting instruction was harmless under the circumstances of this case.

A-4795-17T3

IV.

Defendant next argues for the first time on appeal that the prosecutor made comments during her summation that were not based upon the trial evidence. This argument lacks merit.

Defendant asserts that the prosecutor improperly read from a letter defendant sent to Jackson that was not introduced in evidence. Defendant also alleges that the record did not support the prosecutor's statements that defendant knew he lost Jackson's phone at the murder scene, had time to hide the gun and change clothes before going to the police station, and terrorized the victim "in her final moments." In this regard, defendant argues that the prosecutor "inflamed" the jurors by asking them whether they thought Jackson attempted to shield herself with her hand when defendant shot her. Defendant also complains that the prosecutor stated the trial was a search for the truth. Defense counsel did not object to any of these remarks.

Prosecutorial misconduct is not a basis for reversal unless the conduct "was so egregious that it deprived [the] defendant of a fair trial." State v. DiFrisco, 137 N.J. 434, 474 (1994). Considerable leeway is afforded to prosecutors in presenting their arguments at trial "as long as their comments are reasonably related to the scope of the evidence presented." State v. Frost, 158

13

N.J. 76, 82 (1999).  Thus, "[i]t is not improper for the prosecution to suggest that the defense's presentation was imbalanced and incomplete."  State v. Patterson, 435 N.J. Super. 498, 508 (App. Div. 2014) (quoting State v. Timmendequas, 161 N.J. 515, 593 (1999)).  However, "'[a] prosecutor is not permitted to cast unjustified aspersions' on defense counsel or the defense."  Frost, 158 N.J. at 86 (quoting State v. Lockett, 249 N.J. Super. 428, 434 (App. Div. 1991)).

To determine if the alleged misconduct was sufficiently egregious to warrant reversal, the appellate court "must consider 'whether defense counsel made a timely and proper objection, whether the remark was withdrawn promptly, and whether the court ordered the remarks stricken from the record and instructed the jury to disregard them.'"  Patterson, 435 N.J. Super. at 508 (quoting State v. Wakefield, 190 N.J. 397, 438 (2007)).  As a general rule, a remark will not be considered prejudicial if no objection was made.  State v. R.B., 183 N.J. 308, 333 (2005) (quoting Frost, 158 N.J. at 83).  "The failure to object suggests that defense counsel did not believe the remarks were prejudicial at the time they were made.  The failure to object also deprives the court of an opportunity to take curative action."  Ibid. (quoting Frost, 158 N.J. at 84).

Applying these standards, we are satisfied that none of the prosecutor's comments deprived defendant of a fair trial. Contrary to defendant's assertion, defendant's letter was read to the jury by Sergeant Anastasio Anastasatos. Therefore, it was entirely proper for the prosecutor to refer to it in her summation.

The prosecutor's remarks about defendant losing the victim's phone and having time to hide the gun and change his clothes were fair comment on the evidence presented and in no way denied defendant's right to a fair trial. Similarly, because Jackson was shot from very close range in the hand and her head, the prosecutor's comment that she may have been cowering and trying to shield herself when she was shot was squarely based on the record evidence.

Finally, defense counsel made the following statement to the jury during his summation: "Now, there's often couching of things with a search for the truth, and the truth here is the State has failed to meet its burden." In responding to this comment during her closing argument, the prosecutor stated, "[t]he defendant wants you to believe that this is about a lack of proof or search for doubt, and I submit to you that's not why we're here. This trial is about a search for the truth." Given "the context in which they were given," the prosecutor's remark "did no more than balance the scales." State v. Munoz, 340 N.J. Super.

A-4795-17T3

204, 216 (App. Div. 2001). In addition, immediately after making this comment, the prosecutor emphasized that "every piece of evidence . . . will prove that this defendant is guilty beyond a reasonable doubt – any reasonable doubt . . . . " Therefore, this comment was also not capable of producing an unjust result.

V.

Defendant next argues in Point IV that the trial judge erred by denying his motion to suppress the results of the warrantless search of his garage because the police did not "inadvertently" discover defendant's car in the garage and, as a result, the search could not be justified under the plain view exception to the warrant requirement. This argument also lacks merit.

As the trial judge found in his September 25, 2017 written decision denying defendant's suppression motion, defendant rented one-half of a two-car garage. "Each bay of the garage had its own overhead door. There was no interior wall dividing the garage space. Accordingly, if one were to access one of the bays, the contents of the other would be plainly visible."

Before entering the garage, the police obtained the written consent of the tenant who owned the other half of the structure. Based upon this valid consent, the police were not required to obtain a warrant before entering the tenant's side of the garage. State v. Lamb, 218 N.J. 300, 315 (2014) (making clear that both

16

"[f]ederal and New Jersey courts recognize the consent to search exception to the warrant requirement") (citations omitted).

As the judge stated in denying defendant's motion to suppress,

> [T]he individual who consented to the search had legal access to the shared garage. She had full right and authority to allow the police into her portion of the garage. Defendant's portion was plainly visible from her portion. The inherent lack of privacy in this arrangement was readily apparent to [d]efendant. In addition, the officers did not exceed the scope of the consent to search as there is no evidence, or even argument, that they entered [d]efendant's space prior to the warrant for same being issued.

On appeal, defendant does not dispute that the police properly entered the garage with the consent of the other tenant. However, he now argues that the results of the search should have been suppressed because the plain view exception to the warrant requirement did not apply because the discovery of defendant's car was not inadvertent. Initially, we note that because the search was valid under the consent exception to the warrant requirement, the State did not have to also demonstrate that the plain view exception applied. Nevertheless, we will briefly address the issue.

The plain view exception to the warrant requirement has three elements:

> (1) "the police officer must be lawfully in the viewing area"; (2) "the officer has to discover the evidence 'inadvertently,' meaning that he did not know in

A-4795-17T3

advance where evidence was located nor intend beforehand to seize it"; and (3) "it has to be 'immediately apparent' to the police that the items in plain view were evidence of a crime, contraband, or otherwise subject to seizure."[1]

[State v. Reininger, 430 N.J. Super. 517, 535-36, (App. Div. 2013) (quoting State v. Bruzzese, 94 N.J. 210, 236 (1983)).]

Defendant concedes that prongs one and three of the plain view exception were satisfied because the police entered the garage with the permission of the other tenant, and it was immediately apparent that defendant's car, which had been seen on the surveillance video, was evidence of a crime. However, defendant argues that the officers expected to find defendant's car in the garage and, therefore, the "inadvertent discovery" prong of the test was not met. We disagree.

The record reflects that the police had defendant's apartment under surveillance, and he was not home. They did not know defendant's whereabouts or whether he was using his car. Under those circumstances, the officers were clearly not certain that the car would be in defendant's garage. Therefore, their discovery of the car was "inadvertent" under the then-governing case law.

---

[1] On November 15, 2016, our Supreme Court held prospectively "that an inadvertent discovery of contraband or evidence of a crime is no longer a predicate for a plain-view seizure." State v. Gonzales, 227 N.J. 77, 82 (2016).

## VI.

In Point V, defendant argues that his sentence was excessive because the trial judge improperly applied the aggravating factors. Again, we disagree.

Trial judges have broad sentencing discretion as long as the sentence is based on competent credible evidence and fits within the statutory framework. State v. Dalziel, 182 N.J. 494, 500 (2005). Judges must identify and consider "any relevant aggravating and mitigating factors" that "are called to the court's attention" and "explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 64-65 (2014) (quoting State v. Blackmon, 202 N.J. 283, 297 (2010)). "Appellate review of sentencing is deferential," and we therefore avoid substituting our judgment for the judgment of the trial court. Id. at 65.

We are satisfied the judge made findings of fact concerning aggravating factors that were based on competent and reasonably credible evidence in the record, and applied the correct sentencing guidelines enunciated in the Code. Accordingly, we discern no basis to second-guess the sentence.

## VII.

Finally, defendant correctly contends in Point VI that the judge should not have imposed monetary fines upon him for count three because that count

merged into the first-degree murder conviction under count one.[2]  Therefore, we remand for the entry of an amended Judgment of Conviction removing these fines.

VIII.

In sum, we affirm defendant's convictions.  However, we remand to the trial court for the entry of an amended Judgment of Conviction removing the fines imposed for count three.  We otherwise affirm defendant's sentence.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2]  The State agrees that these fines should not have been assessed.

A-4795-17T3