**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0387-24

ANSELMI & DECICCO, INC.,

    Plaintiff-Respondent,

v.

APPROVED FOR PUBLICATION

January 10, 2025

APPELLATE DIVISION

J. FLETCHER CREAMER & SON,
INC., and PASSAIC VALLEY
WATER COMMISSION,

    Defendants-Respondents,

and

CARBRO CONSTRUCTORS
CORP.,

    Defendant-Appellant.

_____

        Argued December 17, 2024 – Decided January 10, 2025

        Before Judges Gilson, Firko, and Bishop-Thompson.

        On appeal from the Superior Court of New Jersey, Law
        Division, Passaic County, Docket No. L-2225-24.

        Greg Trif argued the cause for appellant (Trif &
        Modugno, LLC, attorneys; Greg Trif and Kyle H.
        Cassidy, of counsel and on the briefs).

Joseph P. McNulty argued the cause for respondent J. Fletcher Creamer & Son, Inc. (Blick Law, LLC, attorneys; Joseph P. McNulty and James J. Ross, on the brief).

Guido S. Weber argued the cause for respondent Passaic Valley Water Commission (Weber Dowd Law, LLC, attorneys; Guido S. Weber, of counsel and on the brief).

The opinion of the court was delivered by

GILSON, P.J.A.D.

In this public bidding dispute, we are asked to determine if an archeologist, who is a subcontractor on a public works project, must be registered in accordance with the Public Works Contractor Registration Act (PWCR Act), N.J.S.A. 34:11-56.48 to -56.57. Because the archeologist will not be performing "public work" as defined by the Prevailing Wage Act (PW Act), N.J.S.A. 34:11-56.25 to -56.47, we hold that the archeologist was not required to be registered under the PWCR Act.

The Passaic Valley Water Commission (the Commission) awarded a public contract to J. Fletcher Creamer & Son, Inc. (Creamer). Carbro Constructors Corp. (Carbro) challenged the award, arguing that Creamer's archeologist subcontractor was not registered under the PWCR Act and, therefore, Creamer's bid should be disqualified. Carbro appeals from a

September 30, 2024 Law Division order, which rejected its challenge and dismissed its claims with prejudice. We affirm the Law Division's order, leaving the contract awarded in place, and, thereby, allowing the project to proceed.

I.

We summarize the facts from the record, noting that the material facts are not in dispute. In March 2024, the Commission issued a solicitation for bids on a project to construct two 2.5-million-gallon prestressed concrete tanks within the footprint of the existing Levine Reservoir in Paterson (the Project). The winning bid would be awarded contract No. 24-B-05, "Water Storage Improvements Phase 1 - Levine Water Tanks" (the Levine Contract).

The solicitation for the Project stated:

> The successful Bidder for each public works contract and each listed subcontractor shall be registered in accordance with the requirements of the [PWCR] Act (N.J.S.A. [] 34:11-56.48 [to -56.57]). The successful Bidder and each listed subcontractor shall possess a certificate at the time the bid proposal is submitted and shall submit the certificate(s) prior to the award of the Contract.

The solicitation also identified various subcontractors that needed to be listed, including an archeologist. Regarding the archeologist's services, the solicitation stated:

A.     Because the Site is listed on the National Register of Historic Places, all excavation activities, construction, staging, and other ground disturbance activities at the site shall be monitored by a qualified Registered Archaeologist (RA).

B.     During monitoring under this section, the RA shall identify and inspect features and elements encountered during the construction activities that it deems as having cultural significance or potential significance.

C.     In consultation with [the Commission], the [New Jersey Historic Preservation Office (the NJHPO)], and the Contractor, the RA may request that work be temporarily stopped to allow sufficient time for investigation, recordation, and data recovery.

D.     Once the reservoir has been dewatered, the RA will evaluate the potential of the pond bed for containing archaeological resources.  He/she will be "on call" as needed, particularly during construction activities that involve excavation of the site.  He/she will monitor construction excavation, as needed.

E.     Any artifacts that are retrieved from the site shall be recorded and photographed, and a report filed with the New Jersey State Museum and/or other repository as determined by the NJHPO.  Any retrieved artifacts shall be delivered to Owner for disposition.

F.     At the end of the monitoring activities, the RA shall prepare a summary monitoring report which meets the standards for such report established by the [NJHPO].

4

In May 2024, the Commission added an addendum to the solicitation concerning the services to be provided by the archeologist. In that regard, the addendum stated that the archeologist's services were to be conducted on site: "The unit price bid shall include all costs required to compensate the archaeologist for labor for on-site services . . . ."

On May 21, 2024, the Commission publicly opened the responsive bids, which revealed that five bids had been submitted:

1.  Anselmi & DeCicco, Inc. (Anselmi):     $40,255,770

2.  Creamer:     $41,819,780

3.  Carbro:     $44,732,529

4.  Railroad Construction Company:     $49,123,608

5.  Rencor, Inc.:     $50,565,551

Four out of the five bids submitted identified archeologist subcontractors which were not registered under the PWCR Act. Only Carbro's bid listed an archeologist, WSP USA, Inc., which was registered under the PWCR Act. All five archeologists were registered with the Register of Professional Archaeologists, a national professional organization.

Carbro protested the bids submitted by Anselmi and Creamer, asserting that both those bids should be rejected as defective, and that Carbo should be

awarded the Levine Contract. Carbro challenged both Anselmi's and Creamer's bids for failing to identify an archeologist subcontractor registered under the PWCR Act. Carbro also challenged both bids on other grounds, which are not raised on this appeal.

After Anselmi and Creamer responded to Carbro's bid challenges, the Commission, with the consent of the parties, considered those challenges on the papers without a hearing. Thereafter, in July 2024, the Commission determined that (1) Anselmi's bid contained a material defect concerning a cost proposal that required its disqualification; (2) Creamer's bid complied in all material respects with the bid solicitation; and (3) Carbro's objections to Creamer's bid were not sufficient to warrant disqualification of Creamer's bid.

In rejecting Carbro's challenge to Creamer's bid, the Commission found that "[n]o archaeologist or archaeology practice is required to register under the [PWCR Act]." Additionally, the Commission found that "[t]he only reasonable meaning of 'registered archaeologist' [as used in the solicitation] is an archaeologist that is registered with the Register of Professional Archaeologists, a nationally-renown[ed] professional organization." Thereafter, the Commission issued a resolution awarding the Levine Contract to Creamer.

On July 26, 2024, Anselmi filed a complaint against Creamer, the Commission, and Carbro challenging the award of the Levine Contract to Creamer. That same day, Carbro filed an answer with counterclaims and crossclaims also challenging the contract award.

The trial court initially issued an order to show cause with temporary restraints enjoining the Commission and Creamer from proceeding with the Levine Contract. Following oral argument, on September 30, 2024, the trial court issued an order and written opinion rejecting Carbro's challenge to the award of the Levine Contract to Creamer and lifting the stay. The trial court also rejected Anselmi's challenges. Anselmi has not appealed from that order.

In its written opinion, the trial court concluded:

> Creamer, as the lowest responsive bidder, was correctly awarded the Project. Further, the bid specifications, as well as state law, do not require that Creamer's archaeologist be registered under the [PWCR Act] for this Project. Further, even if state law did require it, this defect would not be fatal and therefore would not automatically disqualify Creamer's bid. Because Creamer's bid is not disqualified, the [Commission] correctly awarded the Project to Creamer as the lowest responsive bidder.

Carbro moved for a stay pending appeal. The trial court denied that motion in an order issued on October 2, 2024. Thereafter, Carbro filed an

application for emergent relief with us.  With the consent of the Commission and Creamer, the Project was stayed and this appeal was accelerated.

## II.

On this appeal, Carbro only challenges Creamer's bid on the grounds that its subcontractor archeologist was not registered under the PWCR Act.  Carbro makes two arguments.  First, it contends that the trial court erred in concluding that Creamer's failure to identify an archeologist registered under the PWCR Act was not a statutory, material defect that rendered Creamer's bid non-responsive.  In support of that argument, Carbro asserts that the trial court incorrectly interpreted the law to exempt archeologists from the registration requirement under the PWCR Act.  Second, and alternatively, Carbro contends that even if Creamer's bid did not contain a statutory defect, the solicitation expressly required bidders to identify an archeologist subcontractor that was registered under the PWCR Act.  We are not persuaded by either of these arguments because they are inconsistent with the PWCR Act and the bid solicitation.

A.    Our Standard of Review.

When reviewing disputes concerning publicly-bid contracts, "the 'function of [the trial c]ourt is to preserve the integrity of the competitive bidding process and to prevent the misapplication of public funds.'"  <u>Ernest Bock & Sons-Dobco</u>

Pennsauken Joint Venture v. Twp. of Pennsauken, 477 N.J. Super. 254, 264 (App. Div. 2023) (quoting Marvec Constr. Corp. v. Twp. of Belleville, 254 N.J. Super. 282, 288 (Law Div. 1992)).  "We use a deferential standard of review for governmental decisions in bidding cases."  Id. at 263.  "The standard of review on the matter of whether a bid on a local public contract conforms to specifications . . . is whether the decision was arbitrary, unreasonable[,] or capricious."  Ibid. (quoting In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., 279 N.J. Super. 566, 590 (App. Div. 1995)) (internal quotation marks omitted).  "If a public entity's decision is grounded rationally in the record and does not violate the applicable law, it should be upheld."  Ibid.

In contrast, we review issues of statutory interpretation de novo.  State v. Patterson, 435 N.J. Super. 498, 515 (App. Div. 2014).  Accordingly, when reviewing a local entity's or trial court's interpretation of a statute, we exercise plenary review.  Ernest Bock, 477 N.J. Super. at 263.  See also Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 382-83 (2010) (explaining that "'[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference[,]' and, hence, an 'issue of law [is] subject to de novo plenary appellate review[,]' regardless of the

context") (citation omitted) (quoting City of Atlantic City v. Trupos, 201 N.J. 447, 463 (2010)).

B.    Whether an Archeologist Must Be Registered Under the PWCR Act.

The central issue on this appeal is whether Creamer's archeologist subcontractor was required to be registered under the PWCR Act. Resolving that issue requires us to interpret the PWCR Act and the related PW Act.

"When interpreting a statute, [the] aim [is] to effectuate the Legislature's intent, which is best indicated by the statutory text." Keyworth v. CareOne at Madison Ave., 258 N.J. 359, 379 (2024) (citations omitted). See also DiProspero v. Penn, 183 N.J. 477, 492 (2005) ("The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language."). "In construing statutory text, 'words and phrases shall be given their generally accepted meaning, unless that meaning is inconsistent with the clear intent of the Legislature or unless the statute provides a different meaning. Words in a statute should not be read in isolation.'" Keyworth, 258 N.J. at 379-80 (quoting Shelton v. Restaurant.com, Inc., 214 N.J. 419, 440 (2013)).

Accordingly, courts are to "read the statute[] in [its] entirety and construe each part or section . . . in connection with every other part or section to provide

a harmonious whole." C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459-60 (2014) (omission in original) (first quoting State v. Marquez, 202 N.J. 485, 499 (2010); and then quoting Bedford v. Riello, 195 N.J. 210, 224 (2008)) (internal quotation marks omitted). "If the text's plain meaning is clear and unambiguous, we apply the law as written." Keyworth, 258 N.J. at 380 (first quoting State v. J.V., 242 N.J. 432, 443 (2020); and then quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012)) (internal quotation marks omitted). "Conversely, if the text is ambiguous, 'we may turn to extrinsic evidence, including legislative history to aid our inquiry.'" Ibid. (quoting W.S. v. Hildreth, 252 N.J. 506, 518 (2023)). See also DiProspero, 183 N.J. at 492-93 ("[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004))).

It is "[a]n overriding principle of statutory construction" that courts must seek to "harmonize legislative schemes," Richter v. Oakland Bd. of Educ., 246 N.J. 507, 538 (2021), "in light of their purposes," Am. Fire & Cas. Co. v. N.J. Div. of Tax'n, 189 N.J. 65, 79-80 (2006) (citing St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 14 (2005)). "Whenever statutory analysis 'involves the

11

[interpretation] of two or more statutes, [courts] seek to harmonize [them], under the assumption that the Legislature was aware of its actions and intended' for related laws 'to work together.'" N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 555 (2012) (third alternation in original) (quoting State ex rel. J.S., 202 N.J. 465, 480 (2010) (citations omitted)). See also DiProspero, 183 N.J. at 492 (citations omitted) ("We ascribe to the statutory words their ordinary meaning and significance . . . and read them in context with related provisions so as to give sense to the legislation as a whole . . . .").

The PWCR Act was enacted in 2000 to address "growing concern over the increasing number of construction industry workers on public works projects laboring under conditions which violate State labor laws and regulations concerning wages, unemployment and temporary disability insurance, workers' compensation insurance, and the payment of payroll taxes." N.J.S.A. 34:11-56.49(a). Accordingly, the Legislature found it necessary "to establish a registration system for contractors and subcontractors engaged in public works projects in order to better enforce existing labor laws and regulations in the public works industry." N.J.S.A. 34:11-56.49(c).

The PWCR Act requires contractors and subcontractors which bid for and perform public work to be registered. N.J.S.A. 34:11-56.51. In that regard, the PWCR Act states:

> No contractor shall bid on any contract for public work as defined in section [two] of []L. 1963, c. 150 (C.34:11-56.26) [the PW Act], or for which payment of the prevailing wage is required by any other provision of law, unless the contractor is registered pursuant to this act. No contractor shall list a subcontractor in a bid proposal for the contract unless the subcontractor is registered pursuant to [the PWCR Act] at the time the bid is made. No contractor or subcontractor, including a subcontractor not listed in the bid proposal, shall engage in the performance of any public work subject to the contract, unless the contractor or subcontractor is registered pursuant to that act.
>
> [Ibid.]

The plain language of the PWCR Act expressly references "public work" as defined by the PW Act. Thus, in construing whether the Legislature intended a subcontractor to be registered, we look to the definition of public work under the PW Act.

"Public work" is defined in the PW Act as "construction, reconstruction, demolition, alteration, custom fabrication, duct cleaning, or repair work, or maintenance work, including painting, and decorating, done under contract and paid for in whole or in part out of the funds of a public body, except work

performed under a rehabilitation program." N.J.S.A. 34:11-56.26(5). The PW Act then defines "workmen" or "worker" to include "laborer, mechanic, skilled or semi-skilled, laborer and apprentices or helpers employed by any contractor or subcontractor and engaged in the performance of services directly upon a public work, regardless of whether their work becomes a component part thereof, but does not include material suppliers or their employees who do not perform services at the job site." N.J.S.A. 34:11-56.26(7).

In 2022, the Legislature clarified that not all subcontractors need to be registered under the PWCR Act. See N.J.S.A. 34:11-56.51a. Accordingly, the Legislature amended the PWCR Act to state that subcontractors "are not required to register under [the PWCR Act] if they do not perform work at any construction site subject to [the] act." Ibid.

Additionally, a Senate Commerce Committee Statement attached to Assembly Bill No. 2161, which became the PWCR Act, stated "[t]his bill requires certain contractors and subcontractors who perform public works contracts to register with the Department of Labor . . . . Contractors and subcontractors who would be required to register are those who perform or wish to bid on contracts subject to the [PW Act]." S. Com. Comm. Statement to A. 2161, at 1 (June 7, 1999). See also R.C.G. Const. Co., Inc. v. Mayor and Council

of Borough of Keyport, 346 N.J. Super. 58, 65 (App. Div. 2001) (relying on a statement attached to Assembly Bill No. 2161 to interpret the PWCR Act's registration requirements).

Read in full context, the language of both the PWCR Act and the PW Act requires subcontractors to be registered when those subcontractors will be performing public work as defined by the PW Act and they are required to pay "prevailing wage[s]" to their workers under State law.

The archeologist on the Project will not be performing public work as defined by the PW Act. The Levine Contract makes clear that the archeologist will not be engaging in or performing any construction, reconstruction, demolition, alteration, custom fabrication, duct cleaning, repair work, or maintenance work. N.J.S.A. 34:11-56.26(5). Instead, the archeologist will be monitoring "all excavation activities" and preparing "monitoring report[s]."

Carbro argues that the PWCR Act does not exempt professionals, like archeologists, from the mandatory registration requirement. It concedes, however, that no existing caselaw makes that position clear. Instead, Carbro relies on an administrative decision from 2010 issued by the then-acting Commissioner of Labor and Workforce Development (the Commissioner). See

15

N.J. Dep't of Lab. and Workforce Dev. v. TAD Assocs., LLC, No. OAL 10294-07, 2010 N.J. AGEN LEXIS 826 (May 6, 2010).

We are neither persuaded that the TAD Associates decision is directly on point nor is it controlling in light of the more recent 2022 amendment to the PWCR Act. In TAD Associates, the Commissioner found that a licensed surveyor violated the PWCR Act by failing to properly register. Id. at \*11. In contrast to the work to be performed by the archeologist under the Levine Contract, the licensed surveyor in TAD Associates employed an instrument operator and rod person, both of whom were required to be paid the prevailing wage rate for their trades and, therefore, were engaging in public work within the meaning of the PW Act. Id. at \*4-5.

Moreover, the decision in TAD Associates did not have the benefit of the clarification provided by the Legislature in its 2022 amendment to the PWCR Act. See N.J.S.A. 34:11-56.51a. As already noted, the amendment clarified that not all subcontractors are required to be registered. The 2022 amendment made clear that subcontractors who do not work on site are not required to be registered. Nevertheless, we do not read the amendment as limited to off-site subcontractors.

Instead, consistent with the plain language used by the Legislature, the amendment clarifies that subcontractors "are not required to register under [the PWCR Act] if they do not perform work at any construction site subject to that act." N.J.S.A. 34:11-56.51a. The use of the term "work" links back to the definition of "public work" as used in N.J.S.A. 34:11-56.51. In short, if the subcontractor is not performing public work as defined in the PW Act, the subcontractor does not have to be registered under the PWCR Act.

Our construction of the statutes is supported by the record in this matter. As already noted, the PWCR Act was enacted in 2000. In 2024, four out of the five experienced contractors who bid on the Project identified archeologists who were not registered under the PWCR Act. If the statute was as clear as Carbro contends, those experienced contractors should have known that their bids were defective.

Moreover, the hourly rates for the archeologists identified by both Creamer and Carbro make it clear that the archeologist is not being paid as a worker under the PW Act or other State law. Creamer's bid states that its archeologist will be paid an hourly rate of $160. Carbro's bid states that its archeologist will be paid an hourly rate of $300. Both those rates are substantially above the hourly rates required to be paid to other workers under

the PW Act or other State laws establishing prevailing wages. See Current Prevailing Wage Rates, Dep't of Lab. & Workforce Dev., https://lwdwebpt.dol.state.nj.us/archivewages/366111347-statewide-12-31-24.pdf (last visited Jan. 1, 2025) (setting the highest statewide prevailing wage rate at $80.63 an hour for "Heavy & General Laborers - New Trans Hudson Tunnels").

C.    Whether the Commission's Solicitation Required the Archeologist to be Registered under the PWCR Act.

In its second argument, Carbro contends that even if the PWCR Act did not require the archeologist to be registered, the Commission's bid solicitation did require registration. The Commission rejected that argument, and, like the trial court, we discern nothing arbitrary, capricious, or unreasonable in the Commission's interpretation of its own solicitation.

The Commission's solicitation for bids stated: "The successful Bidder for each public works contract and each listed subcontractor shall be registered in accordance with the requirements of the [PWCR] Act (N.J.S.A. [] 34:11-56.48 [to -56.57])." In rejecting Carbro's challenge to the award of the contract to Creamer, the Commission construed its bid instruction to require subcontractors to be registered only if they were required to be registered under the PWCR Act.

In other words, the Commission focused on its use of the phrase "in accordance with the requirements of the [PWCR] Act."

The Commission also clarified that the bid document required bidders to designate "a qualified Registered Archaeologist (RA)." The Commission then found that "[t]he only reasonable meaning of 'registered archaeologist' [was] an archaeologist that is registered with the Register of Professional Archaeologists, a nationally-renown[ed] professional organization." Thus, we discern nothing arbitrary, unreasonable, or capricious in the Commission's construction of its own solicitation for bids for the Project. Accordingly, we see no grounds for reversing the Commission's decision. See Ernest Bock, 477 N.J. Super. at 263 (explaining that "[i]f a public entity's decision is grounded rationally in the record and does not violate the applicable law, it should be upheld").

D.    The Award of the Levine Contract to Creamer.

"[T]he statutory rule in New Jersey is that publicly advertised contracts must be awarded to 'the lowest [responsive] bidder.'" Meadowbrook Carting Co., Inc. v. Borough of Island Heights, 138 N.J. 307, 313 (1994) (quoting N.J.S.A. 40A:11-6.1). "To be responsive, bids must not materially deviate from the specifications and requirements set forth by the local contracting unit." Ernest Bock, 477 N.J. Super. at 264 (citing Meadowbrook, 138 N.J. at 314). So,

"a public contract must be awarded 'not simply to the lowest bidder, but rather the lowest bidder that complies with the substantive and procedural requirements in the bid advertisements and specifications.'" Id. at 265 (quoting Meadowbrook, 138 N.J. at 313).

As already noted, five contractors submitted bids. Anselmi's bid was initially the lowest bid, but the Commission determined that Anselmi's bid contained a material defect requiring its disqualification. Creamer had submitted the second lowest bid, proposing to complete the Levine Project for $41,819,780. Carbro's bid was the third lowest bid, but it proposed to charge almost $3,000,000 more than Creamer by submitting a bid of $44,732,529.

After reviewing all the challenges, the Commission determined that Creamer's bid complied in all material respects with the bid solicitation and the law and awarded the Levine Contract to Creamer. The trial court rejected Carbro's challenge to the award of the contract to Creamer. We now affirm that order. Given our holding, we need not reach the issue of whether the PWCR Act's registration requirement was waivable. Accordingly, we vacate the stay of the award of the Levine Contract to Creamer. Creamer can, therefore, proceed with its work under the Project in accordance with the Levine Contract.

Affirmed. The stay pending this appeal is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0387-24