**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1457-24

LISA RODRIGUEZ,

    Plaintiff-Respondent,

v.

CITY OF NEWARK,

    Defendant-Respondent,

and

JOSE PEREIRA, both
individually and in his
capacity as Captain within
Newark Police Department
and the City of Newark,

    Defendant-Appellant.

_____

Argued March 4, 2026 – Decided June 10, 2026

Before Judges Currier, Smith and Jablonski.

On appeal from the Superior Court of New Jersey,
Law Division, Essex County, Docket No. L-3703-16.

Patrick P. Toscano, Jr. argued the cause for appellant (The Toscano Law Firm, LLC, attorneys; Patrick P. Toscano, Jr., of counsel and on the briefs; Matthew J. Toscano, on the briefs).

Richard Daniel Bause argued the cause for respondent (O'Connor Parsons Lane & Noble LLC, attorneys; Gregory B. Noble, Richard Daniel Bause, and Andrew Karlbon, on the brief).

PER CURIAM

Defendant Jose Pereira appeals from a jury verdict entered against both him and, the City of Newark, holding them liable for compensatory damages awarded to plaintiff Lisa Rodriguez, who accused defendants of sexual harassment and assault and battery. After a thorough review of the trial record and consideration of the applicable standards of review, we affirm.

I.

Since the parties are familiar with the evidence adduced over the thirteen-day trial, we present only the facts from the trial record necessary to contextualize the issues defendant raises on appeal.

Plaintiff sued both the City of Newark and defendant individually alleging she had been "the target of sexual advances, harassment and flirtation" by her superiors in the Newark Police Department. In her five-count complaint, plaintiff, a Newark Police Officer, accused defendants, her

2

supervisor and employer, of creating a hostile work environment under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -50 ("NJLAD") (count one); for gender discrimination (count two); for unlawful retaliation (count three); for aiding and abetting this behavior (count four); and for assault and battery (count five).

Pre-trial plaintiff moved in limine to bar certain evidence, namely her previous relationships with Newark police officers, her spouse's federal criminal conviction, defendant's testimony about out-of-court allegations by Elvis Bernal; certain magazine subscriptions, and prior argumentative behavior.

A Law Division judge heard the motions and concluded evidence concerning defendant's health was irrelevant to the underlying matter but reserved his decision on the magazine issue. After a lengthy discussion regarding the magazine evidence, the judge stated that "for now I'm not going to grant the motion. I think it depends on how it comes up, and I think we'll deal with it as it unfolds." Defendant did not oppose the exclusion of defendant's conversation with Bernal, evidence related to plaintiff's previous relationships, nor evidence of her husband's conviction.

A-1457-24

Immediately before trial, the judge considered an additional in limine motion by plaintiff that sought to exclude evidence related to workplace altercations between plaintiff and other male officers, and evidence of an altercation involving plaintiff and her husband while he was incarcerated. Plaintiff was concerned about defendant eliciting testimony that the jail warden contacted defendant "to tell him that [the incident] had happened and that some investigation was going to be pursued." Plaintiff argued this evidence would be prejudicial because "there[] [was] . . . no substance to this at all" and "even giving the defense the benefit of the doubt that they're trying to say [plaintiff] knew about this and was biased against [defendant] because [defendant] was going to investigate this thing, there's no evidence that [plaintiff] knew about it because there was nothing to know about." Defendant asserted the prison altercation involving the husband "directly [went], . . . to [plaintiff's] motivation because [defendant's] position [was that] she [could not] stand [defendant] for a host of reasons, one of which . . . [related to the prison confrontation]."

In a brief oral decision, the court barred this testimony and ordered "this other stuff with regard to a conversation that . . . plaintiff didn't know about between the warden and somebody in the [Internal Affairs] division of the City

4

of Newark Police Department for which there's no basis, . . . [was] [inadmissible]." Additionally, the court ordered that evidence of an altercation involving plaintiff and other officers was to be excluded "given the lack of proximity in time or subject matter." However, the court indicated it might revisit the issues if required as the trial progressed.

Trial began. During opening statements, plaintiff's counsel informed the jury that they were "going to hear from a psychiatrist named Barbara Ziv out of Philadelphia. She testified in the Bill Cosby case. She testified for the government in the Harvey Weinstein cases." At the conclusion of counsel's statement, defendant moved for a mistrial arguing counsel's reference to "Bill Cosby" prejudiced defendant. The judge denied the application and the trial continued.

Plaintiff testified that after she returned from medical leave, she was assigned to work in the Newark Police Department's third precinct. Pereira was plaintiff's captain. Plaintiff recalled that on her first day back, Pereira berated her for mistakenly parking her patrol vehicle "in the middle of the street." According to plaintiff, she endured disproportionate verbal abuse from Pereira when compared to other officers in the precinct. Plaintiff specifically detailed an experience with Pereira in the back-office desk area. She testified

that while in the office desk area, she "fe[lt] something brush off [her] buttocks. And as soon as [she] felt something, someone rubbing past [her], [she] turned around. And when [she] turned around quickly, [Pereira] said, oh, that was an [accident], that was almost an [accident]." Plaintiff said she was both shocked and offended by the contact. Plaintiff continued to explain that Pereira frequently

> violated [her] personal space [e]very single time when [Pereira] tried to separate [her] from [her] partner and [she] had to be by [her]self . . . [Pereira] made sure that [he] was placed in another room so that [she] would have to come and go behind the desk . . . .
>
> [Pereira] would [then] come out and lean between an area and put his leg up on a step so that when [she] would have to come back between [a] little doorway, [she] would have to ask him to move. [Defendant] thought it was funny and cute every single time and didn't want to move. . . .
>
> [W]hen he wouldn't move, [she] would then take over and hug the counter to pass . . . between his knee that ended up rubbing past her buttocks. [Pereira] would do that every day of [her] tour until [she] got tired of him doing that.

Plaintiff detailed a specific incident where Pereira touched her. Plaintiff was behind a desk going over some paperwork, when Pereira entered the precinct. Plaintiff testified that she "had just finished asking [three other officers] if they wanted a mint." Having heard the offer, Pereira asked

6

plaintiff why she had not asked him if he wanted one. Plaintiff then offered a mint, and defendant refused to take it. After submitting her assignment, plaintiff packed her things and prepared to leave. As she did so, defendant "slammed the door and leaned on it with his shoulder." Defendant renewed his request for a mint. Plaintiff explained that the mints were in her hat. Defendant then "reache[d] in to grab the mint. He t[ook] the mint, put[] it in his mouth and lean[ed] towards [her] and sa[id], . . . that it was good." When plaintiff attempted to leave, Pereira "kept leaning on [her], . . . took his knee and took [her] . . . left knee into [her] right knee and held it," pinning her against the wall and trying to "make out with her." At this point, plaintiff began to fight defendant off and scream. Plaintiff testified that Pereira then started "grabbing and touching [her] on the side of [her] breasts, . . . waist and . . . ass."

Plaintiff called Dr. Barbara Ziv, a forensic psychiatrist, who, during voir dire, provided the jury with "an example of cases where [she] testified as a blind witness," "meaning teaching the jury about counterintuitive victim behaviors." Dr. Ziv testified "in both Harvey Weinstein criminal trials . . . and . . . the second Bill Cosby trial." Dr. Ziv concluded that "the sexual harassment that [plaintiff] endured . . . caused her to develop[] major

7

depressive disorder, which [was] what -- she presented with symptoms of that when [Dr. Ziv] evaluated her. . . ." According to Dr. Ziv, plaintiff "met [the] criteria for diagnosis of persistent depressive disorder." Dr. Ziv noted that plaintiff "was not only internally consistent" with her story but also exhibited "behaviors that are almost universally described by victims of sexual harassment in the workplace."

Pereira testified he never sexually harassed plaintiff or "anyone within the third precinct in [his] entire [thirty-two year] career."

At the close of testimony, Pereira moved for a directed verdict. After considering the arguments, the court reserved its decision on the motion and submitted the case to the jury. It further stated that it elected "to hold . . . this in abeyance pursuant to [Rule 4:40-2] and see if whether in fact a verdict is returned and then . . . decide accordingly . . . ."

The jury found for plaintiff and concluded she was the victim of a hostile work environment under the NJLAD and awarded compensatory damages in the amount of $250,000. The jury also found Pereira liable for assault and battery and awarded her $1 million. The court denied Pereira's motion for directed verdict. After calculating interest, the trial court entered a judgment against the City of Newark and Pereira in the amount of $318,075.48

A-1457-24

jointly and severally, and $1,272,301.91 against Pereira personally. The court also awarded plaintiff attorney's fees and costs.

On appeal, Pereira challenges the trial court's rulings on (1) the admissibility of evidence following the motions in limine, (2) alleged prejudicial remarks made by plaintiff's counsel during opening statements, (3) the denial of Pereira's motion for judgment under Rule 4:40-1, (4) alleged cumulative errors resulting in a denial of a fair trial, and (5) the rationality and proportionality of the jury's compensatory damages award.

## II.

Pereira first argues the trial court erred when it refused to take remedial efforts including grant a mistrial following plaintiff's counsel's remark made during opening statements that plaintiff's expert witness "had testified against former actor Bill Cosby." According to Pereira, this remark was prejudicial and requires a new trial. We disagree.

Pereira asserts his attorney noticed a visible reaction by one juror to the Cosby reference and speculates that "[by] invoking the name of Bill Cosby, plaintiff's counsel . . . suggest[ed] an implicit association between [Pereira] and the notorious criminal sexual conduct of Cosby[] [and] . . . improperly bolster[ed] the credibility of Dr. Ziv by associating her with a high-profile

9

prosecution." Acknowledging opening statements are not evidential, we discern no error in the trial court's decision not to issue a curative instruction nor to grant the extraordinary relief of a mistrial.

A motion for a mistrial "is addressed to the sound discretion of the court, [and] the power to grant such a motion should be exercised with the greatest of caution." Escobar-Barrera v. Kissin, 464 N.J. Super. 224, 231 (App. Div. 2020) (quoting Wright v. Bernstein, 23 N.J. 284, 296 (1957)) (internal quotation marks omitted). "Accordingly, '[a]n appellate court will not disturb a trial court's ruling on a motion for a mistrial, absent a [misapplication] of discretion that results in a manifest injustice.'" State v. Patterson, 435 N.J. Super. 498, 509-10 (App. Div. 2014) (quoting State v. Jackson, 211 N.J. 394, 407 (2012)). It is well within the trial court's competence to determine whether a purportedly prejudicial remark made during an opening statement requires a curative instruction or was so extraordinary as to require a mistrial. See State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019).

The trial judge's decision not to declare a mistrial nor to issue a curative instruction does not amount to a manifest denial of justice. See State v. Loftin, 146 N.J. 295, 365-66 (1996) ("The determination of whether the appropriate response is a curative instruction, as well as the language and detail of the

instruction, is within the discretion of the trial judge."). Plaintiff's reference to Dr. Ziv's expertise and credentials was not unfairly prejudicial to Pereira. The comments were based on the information Dr. Ziv was going to present during her qualification as an expert. See State v. Kelly, 97 N.J. 178, 213 (1984) ("[B]efore expert testimony may be presented, there must be a showing that the proffered witness has sufficient expertise to offer the intended testimony.").

Pereira's claim that this reference likened him to Bill Cosby is speculative at best. The two references to Bill Cosby were made solely to highlight Dr. Ziv's credibility and reputation as an expert in sexual harassment, and did not imply any association between defendant and Cosby. Although defendant's counsel observed one juror smiling after hearing the Bill Cosby reference, the court "didn't see that." Therefore, considering this issue under the applicable standard of review, the trial court's actions do not rise to the level of manifest denial of justice required to warrant a new trial.

III.

Pereira argues that by denying the pertinent motions in limine, the trial court improperly denied him the opportunity to cross-examine plaintiff and introduce evidence on specific topics that he alleges were relevant to his

defense of the matter. Those include: (1) an investigation conducted by Pereira into a prior altercation involving plaintiff at a federal correctional facility where her husband was incarcerated; (2) evidence concerning plaintiff's prior consensual relationships with members of the Newark Police Department, which Pereira asserts would have undermined her claim that she was harassed by other officers and subjected to a hostile work environment; (3) incidents involving plaintiff's physical altercations with multiple Newark police officers; and (4) the nature of plaintiff's relationship with her husband, offered to demonstrate that her allegations against Pereira were, at least in part, motivated by loyalty to her husband, with whom the defendant had a longstanding acrimonious relationship.

Overall, according to Pereira, "[t]he [t]rial [c]ourt failed to adequately weigh the probative value of evidence implicating . . . plaintiff's credibility against its potential prejudice." "By precluding these areas of inquiry and barring the introduction of corroborating evidence, the [t]rial [c]ourt effectively gutted the defense and shielded several of . . . plaintiff's allegations from meaningful credibility challenges." We disagree.

When considering a trial court's decisions made on motions filed in limine, we apply the same standard of review as we do when considering the

A-1457-24

trial court's adjudication of the admissibility of evidence. Primmer v. Harrison, 472 N.J. Super. 173, 187 (App. Div. 2022). We recognize these decisions involve the exercise of discretion and we will defer to a trial judge's decision unless we conclude the judge misapplied it. State v. Garcia, 245 N.J. 412, 430 (2021); State v. Rochat, 470 N.J. Super. 392, 453 (App. Div. 2022); see also State v. Prall, 231 N.J. 567, 580 (2018) (We "review the trial court's evidentiary rulings 'under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion.'") (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 383-84 (2010)). Under that deferential standard, we "review a trial court's evidentiary ruling only for a 'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)).

It is axiomatic that "[a]ll relevant evidence is admissible, except as otherwise provided by the[] rules or by law." N.J.R.E. 402. "[R]elevant evidence may be excluded if its probative value is substantially outweighed by the risk of: (a) undue prejudice, confusion of issues, or misleading the jury; or (b) undue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403; see also State v. Higgs, 253 N.J. 333, 358 (2023)

13

("Probative value is the tendency of evidence to establish the proposition that it is offered to prove."). "Evidence should be barred if its probative value 'is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from reasonable and fair evaluation of the basic issue[s]." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999) (quoting State v. Thompson, 59 N.J. 396, 421 (1971)). "'Relevant evidence' means evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. A motion in limine is a "pretrial request that certain inadmissible evidence not be referred to or offered at trial." Seoung Ouk Cho v. Trinitas Reg'l Med. Ctr., 443 N.J. Super. 461, 470 (App. Div. 2015) (quoting Black's Law Dictionary 1109 (9th ed. 2009)) (internal quotation marks omitted). "Our courts generally disfavor in limine rulings on evidence questions." State v. Cordero, 438 N.J. Super. 472, 484 (App. Div. 2014). "[I]n the event the trial court addresses [evidentiary] issues in a pre-trial proceeding, the trial court must be sensitive to the need to revisit its pre-trial rulings in light of the developing record at trial." Ibid. (second alteration in the original) (quoting State v. Jones, 308 N.J. Super. 15, 46 (App. Div. 1998)) (internal quotation marks omitted).

## A.

Although the record is sparse as to the incident at the institution where plaintiff's husband was incarcerated, apparently plaintiff engaged in an argument with her husband after seeing his "former girlfriend's name in the logbook where visitors were." The warden of the jail called defendant to inform him of the argument. Defendant proffered he planned to testify that plaintiff knew that the warden called him and knew Pereira was going to be involved in an investigation of the incident. According to Pereira, the "proffered testimony was clearly relevant and went directly to impeaching . . . plaintiff's credibility." He contends "[t]he defense was entitled to demonstrate a motive to fabricate the allegations and falsely accuse [Pereira] of sexual harassment."

The trial court excluded the evidence, finding:

> I think all this other stuff with regard to a conversation that . . . plaintiff didn't know about between the warden and somebody in the [Internal Affairs] division of the City of Newark Police Department for which there's no basis, for which there's no documentation to show, at this juncture, it's out. Don't mention it on opening.
>
> If something comes up, depending on how the case develops during the trial, if something else happens, something else comes out, I'll revisit the issue. But I think for purposes of opening, I think it's out.

15

We conclude the court did not abuse its discretion in excluding the testimony. First, although it prevented Pereira from introducing evidence regarding the incident during his opening statement, the court reserved the right to revisit the issue as the trial progressed. See Cordero, 438 N.J. Super. at 484. Second, the issue was never presented at trial and therefore, the court did not need to revisit it. Finally, the testimony was irrelevant to the underlying matter because the dispute had no bearing on plaintiff's claim that she had been consistently assaulted by Pereira.

B.

Pereira argues that the trial court's preclusion of evidence as to plaintiff's prior consensual relationships with members of the Newark Police Department deprived "defendant of the right to cross-examine . . . plaintiff, impeach her credibility, and seek an appropriate jury charge." Defendant did not object to the preclusion of this evidence at trial.

Since defendant did not raise the issue below, he is not permitted to argue on appeal that the trial court erred in a decision to which he acquiesced. See State v. Munafo, 222 N.J. 480, 487 (2015) ("[T]rial errors which were induced, encouraged or acquiesced in or consented to by defense ordinarily are not a basis for reversal on appeal.") (internal quotation marks omitted).

16

Additionally, we note plaintiff's claim was limited to the City of Newark and defendant and whether defendant sexually assaulted plaintiff. Plaintiff's alleged consensual relationships with other officers are irrelevant to this analysis and provide no probative value regarding the issue to be considered by the jury. Instead, it would have been unreasonably inflammatory and highly prejudicial. We find the trial court did not misapply its discretion when it excluded evidence of plaintiff's prior consensual relationships.

C.

Defendant argues that the trial court further limited the defense "by barring cross-examination and the introduction of evidence concerning . . . plaintiff's multiple physical altercations with other Newark police officers." This evidence, according to defendant, "was highly relevant to demonstrate that . . . plaintiff's own aggressive and unprofessional conduct, rather than . . . defendant's alleged actions, was the primary contributor to any hostile work environment at the [t]hird [p]recinct." In opposition, plaintiff argues this issue is moot because the court "allowed evidence of previous physical altercations in at trial, overruling the objection of [plaintiff]'s counsel."

As proffered by defendant, plaintiff allegedly had altercations with various officers. Although most of these incidents were undocumented,

17

plaintiff's counsel stated that "there [wa]s documentation for one of the incidents."[1] This particular event occurred in 2008-09 and did not involve defendant in any capacity. In initially excluding this evidence from defendant's opening statement, the court was unconvinced that it was "more probative than prejudicial . . . given the lack of proximity in time or subject matter."

Defendant also sought to introduce evidence related to an incident in which plaintiff allegedly "wanted to fight another officer because she loaned him [$30,000]." Plaintiff's counsel argued against admitting this testimony, explaining that the incident lacked probative value and had not been raised until after all the testimony. In excluding the evidence, the court found that it was "a collateral issue" and not "particularly probative of anything [up to] [that] point."

Pereira's argument lacks merit and mischaracterizes the record. First, despite the trial court's initial ruling, defendant was able to cross-examine plaintiff regarding alleged altercations involving other officers. In fact, the trial court overruled plaintiff's objection, allowing such cross-examination to proceed. Pereira's attorney was therefore able "to probe on . . . cross[-]

---

[1] The document is not included in the record.

examination with respect to altercations that she had had in the office." Similarly, as to the $30,000 loan incident, as the court concluded, it had no relevance to the issues presented at trial. In opposition, Pereira merely sought to delay a ruling in case it arose during cross-examination. The court agreed and reserved its right to revisit the issue. However, the matter never resurfaced nor does Pereira claim otherwise.

In sum, Pereira's arguments are moot as he had an opportunity to introduce evidence as to alleged physical altercations involving plaintiff.

D.

Pereira contends the trial court erred by prohibiting "the defense from cross-examining . . . plaintiff about her relationship with her husband," and by precluding defense from questioning "Dr. Ziv about whether . . . plaintiff had discussed [her relationship with her husband] during her evaluation." Defendant asserts the trial court's restriction prevented defendant from exploring what he alleges was "plaintiff's motive for making false allegations."

Our review of the evidence reflects Pereira's argument is inconsistent. He cites cross-examination testimony to suggest plaintiff and her husband disliked him, yet also claims he couldn't cross-examine plaintiff on this issue. Both cannot be true: if he questioned her about animosity, he had the chance

19

to explore this motive. Additionally, the court did not stop defendant from asking Dr. Ziv about the relationship, as it was in her report, and he did question Dr. Ziv about it. Therefore, Pereira's claim that he was unable to cross-examine plaintiff or her expert on this topic is false. Since he already had the opportunity to address this issue, his argument is moot.

## IV.

Pereira insists the trial court erred in its denial of his motion for judgment and directed verdict, due to plaintiff failing "to meet her burden of proving, by a preponderance of the evidence, that [Pereira] committed any act of retaliation, sexual harassment, or inappropriate touching." We are unconvinced.

On Pereira's motion for judgment under Rule 4:40-1, the court reserved its decision and submitted the case to the jury. The court reserved its right to "decide the motion either before or within [ten] days after the verdict." R. 4:40-2. After a verdict was returned in favor of plaintiff, the court denied Pereira's motion.

A motion for judgment at the close of all the evidence is governed by Rule 4:40-1. An application under this Rule should be denied if "accepting as true all the evidence which supports the position of the party defending against

20

A-1457-24

the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced [from it], reasonable minds could differ . . . ." Verdicchio v. Ricca, 179 N.J. 1, 30 (2004) (quoting Est. of Roach v. TRW, Inc., 164 N.J. 598, 612 (2000)).

Considering this standard, and assuming all of plaintiff's testimony is true and granting her all reasonable inferences drawn from it, Pereira fails to meet the applicable standard. Throughout the trial, plaintiff presented substantial evidence corroborating her claims against Pereira, culminating in a jury verdict in her favor. Defendant's assertion that "plaintiff's evidence in support of her claims for sexual harassment, assault, and battery was far from compelling," is unsupported by the evidence. In deciding applications of this type, "[t]he judicial function here is quite a mechanical one. The [reviewing] court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Prioleau v. Kentucky Fried Chicken, Inc., 434 N.J. Super. 558, 569 (App. Div. 2014) (quoting Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969)). Because defendant has failed to satisfy the requisite standard, the trial court correctly denied defendant's motion for a directed verdict pursuant to Rule 4:40-1.

21

Finally, Pereira claims that "the compensatory damage award was disproportionate to any harm allegedly suffered by . . . plaintiff and, was therefore, manifestly unjust." Pereira surmises that "[t]here is a reasonable probability that the jury, in calculating damages, improperly conflated [plaintiff's history of sexual assault, unrelated to Pereira] with the discrete allegations against [Pereira], thereby punishing him for alleged conduct far beyond the scope of the specific claims at issue."

"'[A] jury verdict, from the weight of the evidence standpoint, is impregnable unless so distorted and wrong, in the objective and articulated view of a judge, as to manifest with utmost certainty a plain miscarriage of justice.'" Doe v. Arts, 360 N.J. Super. 492, 502-03 (App. Div. 2003) (alteration in the original) (quoting Carrino v. Novotny, 78 N.J. 355, 360 (1979)). Furthermore, a "jury's verdict, including an award of damages, is cloaked with a 'presumption of correctness.' The presumption . . . is not overcome unless a defendant can establish, 'clearly and convincingly,' that the award is a 'miscarriage of justice.'" Cuevas v. Wentworth Grp., 226 N.J. 480, 501 (2016) (citations omitted). Importantly, Rule 2:10-1 explicitly states that "the issue of whether a jury verdict was against the weight of the evidence

shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court." (emphasis added); see Fiore v. Riverview Med. Ctr., 311 N.J. Super. 361, 362 (App. Div. 1998) ("Plaintiffs' sole argument on appeal is that the damages verdict was against the weight of the evidence and consequently a new trial should be granted . . . . However, plaintiffs failed to move for a new trial. Consequently, their appeal is foreclosed by Rule 2:10-1 . . . ."). Similarly, here, defendant's application is procedurally barred by the Rule.

Substantively and considering the record in its entirety and acknowledging the presumption of correctness that attaches to a jury verdict, we do not discern any error nor that the jury's award of compensatory damages represented a manifest injustice.

To the extent we have not addressed Pereira's remaining arguments, it is because our disposition makes it unnecessary or the arguments were without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1457-24